UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| MARLENA ROSADO, on behalf of herself and all others similarly situated, | CASE NO. 20-cv-21813-JEM |
| Plaintiff, | |
| v. | |
| BARRY UNIVERSITY, INC, | |
| Defendant. | |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Marlena Rosado, on behalf of herself and a proposed Settlement Class[1] of individuals similarly situated, with the consent of Defendant Barry University, respectfully requests entry of an order granting Preliminary Approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying a class, appointing Class Counsel, appointing Plaintiff as Class Representative for settlement purposes, providing for issuance of Notice to the Settlement Class, and scheduling a date for the Final Approval Hearing.

## I.     INTRODUCTION

Plaintiff seeks preliminary approval of a proposed Settlement of claims asserted against Defendant. This Settlement is the culmination of one of many novel class actions that arose when colleges nationwide ceased in-person instruction in-response to the ongoing COVID-19 pandemic without issuing pro-rata refunds to students who paid to attend university programs they expected to be solely in-person and on-campus. Although many similar actions have been filed, this is the first one in which the Parties announced a settlement. The Settlement represents excellent results

---

[1] All capitalized terms herein have the same meaning as those set forth in the parties' Settlement Agreement, attached as *Exhibit A.*

for the Settlement Class, which Class Counsel calculates to be approximately 60% of Settlement Class Members' total likely recoverable damages for the portion of the Spring 2020 Semester following Barry University's COVID-19 campus closure and transition to online learning.

The Settlement is the result of arm's-length negotiations achieved with the assistance of mediator D. Andrew Byrne, Esq. and provides for substantial and meaningful relief to the Settlement Class. If approved, the Settlement will create a $2,400,000 Settlement Fund and will resolve all claims Plaintiff and the Settlement Class Members have against Barry University arising from Barry University's transition to remote education during the Spring 2020 Semester and limiting services on its campus. It will also avoid further delay in providing relief to the prospective Settlement Class and avoid further protracted litigation with uncertain results.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval. *See Joint* Declaration of Class Counsel Jeff Ostrow, Anna Haac, and Daniel Warshaw, attached hereto as ***Exhibit B.***

## II.     BACKGROUND

### A.     Facts

As alleged in Plaintiff's Complaint, in March 2020, in response to the COVID-19 pandemic, Barry University moved all of its learning to remote platforms for the remainder of the Spring 2020 Semester, encouraged students living in on-campus housing to vacate, and limited other on-campus facilities and services. As a result, students no longer received in-person instruction and many students were unable to access campus housing, dining, and other on-campus resources for which they had paid or for which they had been charged prior to the start of the semester. Despite the move to remote education and closing of some campus facilities, Barry University did not issue a full prorated refund of Tuition Fees or Fees for the Spring 2020 Semester.

### B.      Procedural History

On May 1, 2020, Plaintiff filed a class action complaint on behalf of herself and all others similarly situated seeking a prorated refund of Tuition Fees and Fees paid towards the Spring 2020 Semester. [DE # 1]. On June 12, 2020, Barry filed a Motion to Dismiss. [DE # 12]. Plaintiff filed an Amended Complaint on June 26, 2020. [DE # 15]. The Amended Complaint alleged that because Barry moved in-person instruction online and restricted access to housing, dining, and on-campus resources without providing a refund, it was in breach of contract, or in the alternative, unjustly enriched. Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint on July 10, 2020, which was fully briefed by both Parties, including the filing of several Notices of Supplemental Authority. [DE # 21, #23, #27, #29, #34-#37, #41, #44-#45, and #49-#50]. Defendant also filed a Motion to Strike Class Allegations on October 16, 2020. [DE # 46]. On October 30, 2020, this Court denied Defendant's Motion to Dismiss and on November 2, 2020, the Court denied Defendant's Motion to Strike. [DE # 51, #55]. Defendant filed an Answer and Affirmative Defenses on November 13, 2020. [DE#56]. The Parties began the discovery process seeking information about Plaintiff's claims and Defendant's defenses. Joint Decl. ¶5.

Thereafter, the Parties began discussing the prospect of settlement and scheduled a mediation for January 7, 2020. *Id.* at ¶6. In advance of the mediation, the Parties exchanged informal discovery regarding the Plaintiff's and the putative class' damages and had multiple telephonic conversations to clarify questions or obtain additional information. *Id.* The Parties did not settle the day of mediation; however, they continued to engage in settlement discussions and ultimately reached an agreement in principle. *Id.* On February 9, 2021, the Parties filed a Notice of Settlement and Joint Motion to Stay All Deadlines, which was granted on February 10, 2021. *Id.* at ¶7. [DE #68 - #70]. Thereafter, for the next few weeks, the Parties negotiated the Settlement,

resulting in signing the Agreement on March 17, 2021. Joint Decl. ¶7.

## III.    MATERIAL SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

### A.    The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> All Students who were enrolled during the Class Period as well as others who paid
> or were charged Tuition Fees, Room and Board Fees, Health Fees, Lab and
> Materials Fees, or Other Fees on behalf of such Students.

Settlement ¶ 1. The Settlement Class excludes the following: (1) any Student who previously signed a release with Barry University relative to their enrollment; (2) Barry University, its parents, subsidiaries, affiliates, officers, and directors; and (3) all judges assigned to this litigation and their immediate family members. *Id.*

### B.    Settlement Consideration

Pursuant to the Settlement, Defendant has agreed to establish a Settlement Fund for the benefit of Settlement Class Members in an amount of $2,400,000. Settlement ¶ 3. The Settlement Fund is the maximum amount of money that Defendant shall be required to pay or credit to the Settlement Class to resolve this Action. *Id.* It also includes all monetary or other benefits paid under the Settlement by Defendant, including any Service Award for the Plaintiff, Class Counsel's attorneys' fees and litigation costs, and all Settlement Class Member Benefits, pre-judgment or post-judgment interest, and all Settlement administration costs. Settlement ¶¶ 3.

### C.    The Notice Program

Although Barry University reserves the right to self-administer a portion of the Settlement limited to the distribution of the Settlement Class Member Benefits, the Parties have jointly retained JND Legal Administration, a third-party administrator, to assist with the dissemination of

Notice and the implementation of the Settlement. The Notice Program consists of three types of direct Notice: (1) Email Notice; (2) Postcard Notice; and (3) Long Form Notice. Settlement ¶ 11. Former Students will receive a Postcard Notice and Current Students will receive an Email Notice, unless the email address on file at Barry University is no longer valid, in which case Current Students will receive a Postcard Notice. *Id.* Long Form Notice will be available for review on the Settlement Website or will be sent by email or regular mail by Barry University or Class Counsel upon Settlement Class Member request. *Id.* If a notice sent by U.S. Mail is returned as undeliverable, the Settlement Administrator will run the Student's name through the National Change of Address registry and remail the Notice within ten days. *Id.* The Notice Program begins 30 days after the entry of a Preliminary Approval Order and will conclude 60 days after it begins. *Id.* The forms of the proposed Email Notice and Postcard Notice, which are the same, and Long Form Notice, agreed to by the Parties, subject to this Court's approval and/or modification, are attached hereto as ***Exhibits C*** and ***D***.

The Notice Program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a link to the Election Form; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's attorneys' fee application and/or the request for a Service Award for the Class Representative; the date of the Final Approval Hearing; and information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents, including the Long Form Notice. Complete opt-out and objection requirements are listed in the Settlement and in the Long Form Notice. Settlement ¶ 11; Long Form Notice ¶ 18. The Notice Program provides the best notice practicable

and complies with due process and Federal Rule of Civil Procedure 23 (c)(2).

**D.    Election Form**

Although not required to participate in and receive benefits under the Settlement, Settlement Class Members may choose to complete an electronic Election Form to indicate whether they prefer a cash payment or a Tuition Credit. Settlement ¶ 11. The Notice will direct Settlement Class members to a link to the Settlement Website to submit an Election Form.

Settlement Class Members who complete the Election Form, will receive the Settlement Class Member Benefit allocated to them in accordance with what they elected on their Election Form after Barry University exercises its option to first apply the Settlement Class Member Benefit to any outstanding balance owed to Barry University. Settlement ¶ 8. Those Settlement Class Members who do not complete an Election Form will receive their Settlement Class Benefit as follows: (a) Former Students will receive a cash payment to their address on file with Barry; and (b) Current Students who have not graduated when payment of the Settlement Class Member Benefit is due will receive a cash payment or a Tuition Credit, at Barry's discretion. *Id.*

Regardless of whether Settlement Class Members complete an Election Form (or whether they are a Former Student or a Current Student), Barry University reserves the option to first apply their Settlement Class Member Benefit to any outstanding balance they have at Barry University, prior to distributing the cash payment or Tuition Credit. *Id.*

**E.    Allocation of the Settlement Class Member Benefits**

Within 15 business days after Final Approval, or if there are objections, within 15 business days after the Effective Date, Settlement Class Member Benefits shall be distributed as follows:

  a.  **Tuition Allocation**: 78% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Tuition Fees for the Spring 2020 semester. Barry shall determine the percentage of the net Tuition Fees it received for Spring 2020 from Full-Time Students and from Part-Time

Students. The percentage of net Tuition Fees received from Full-Time Students will be the percentage of the Tuition allocation of the Net Settlement Fund to disburse to the Full-Time Students, divided equally among all Settlement Class Members who were Full-Time Students. The percentage of net Tuition Fees received from Part-Time Students will be the percentage of the Tuition allocation of the Net Settlement Fund to disburse to Part-Time Students divided equally among all settlement Class Members who were Part-Time Students.

b. **Room, Board, and Fee Allocation**: 22% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Room and Board Fees, Health Fees, Lab & Material Fees, and Other Fees for the Spring 2020 semester, and distributed according to the following schedule:

    i. 18% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Room and Board Fees and divided equally among those Settlement Class Members who were Residential Students.

    ii. 2% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Health Fees and divided equally among those Settlement Class Members who were charged or paid a Health Fee in Spring 2020.

    iii. 2% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Lab and Materials Fees and Other Fees and divided equally among all Settlement Class Members who were charged or paid a Lab and Materials Fees and Other Fees.

Settlement ¶ 9.

### F.  Funds Remaining after Initial Distribution

Settlement Class Members who receive cash refunds shall have 90 days from the date on the checks to negotiate their Settlement Class Benefit. Any Settlement checks not negotiated by Settlement Class Members within this time period shall be used by Barry University for the direct benefit of Barry University students in a manner it sees fit in its discretion. Settlement ¶ 10.

### G.  Settlement Administrator

JND Legal Administration, the proposed Settlement Administrator, is a well-respected and reputable administrator. Joint Decl. ¶13. JND was selected after the Parties retained bids from multiple administrators and determined that engaging JND was in the best interests of the

Settlement Class. *Id.* JND's costs will be paid from the Settlement Fund. *Id.*

      **H.**      **Opt-Out and Objection Procedures**

      As detailed in the Long Form Notice, Settlement Class Members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. Opt-out procedures are specified in the Settlement and in the Notice. Settlement Class Members who wish to opt-out must send a letter to the Settlement Administrator with the student's name, student identification number(s), address, telephone number, and email address.

      The Long Form Notice also specifies how Settlement Class Members may object to the Settlement and instructs them to send a written document to the Clerk of Court, Settlement Administrator, Class Counsel, and Defendant's Counsel. The objection must include (a) the name of the Action; (b) the objector's full name, address and telephone number; (c) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (d) all grounds for and legal support for the objection known to objector or objector's counsel; (e) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (f) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (g) a copy of orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (h) any and all agreements that relate to the objection or the process of objecting—whether written

or oral—between objector or objector's counsel and any other person or entity; (i) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (j) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (k) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (l) the objector's signature (an attorney's signature is insufficient). *See* Long Form Notice, Ex. D.

**I.**    **Release of Claims**

Plaintiff and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the release and discharge of the Released Claims against the Released Persons. The Released Claims are narrowly tailored and are limited to, "relating to, or in connection with Tuition Fees, Room and Board Fees, Health Fees, Lab and Materials Fees or Other Fees relating to or arising out of the Spring 2020 semester and paid by or charged to Settlement Class Members or on their behalf." Settlement ¶ 14 (a).

**J.**    **Class Counsel Fees and Expenses and Plaintiff's Service Award**

Defendant has agreed not to oppose Class Counsel's requests for attorneys' fees and costs of up to 33.33% of the Settlement Fund. Settlement ¶ 3. Further, upon Court approval, Plaintiff shall receive a Service Award of $5,000 for serving as the Class Representative, payable from the Settlement Fund. Settlement ¶¶ 3, 9. The Court should consider whether to grant these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

**IV.**    **THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL**

**A.**    **The Legal Standard for Preliminary Approval**

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th

Cir. 1992) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co*., No. 09-cv-60646, 2010 WL 2401149 at *3 (citation omitted). Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).

Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id*. (citations omitted). The threshold for granting preliminary approval is low: a proposed settlement will be preliminarily approved "as long it is 'fair, adequate and reasonable and not the product of collusion between the parties.'" *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671-72 (S.D. Fla. 2006) (quoting *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (quoting *Smith,* 2010 WL 2401149 at *2). In the second step of approving a settlement, after notice to the settlement class and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Fresco,* 2007 WL 2330895, at *4.

Class Counsel and Barry University respectfully request that the Court take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness and it satisfies all standards for Preliminary Approval, including Plaintiff's obligations under Rule 23(e)(1), as amended effective December 1, 2018.

### B.     The Settlement Meets the Criteria for Preliminary Approval

A preliminary review of the fairness and adequacy factors demonstrates that the Settlement warrants Preliminary Approval under Rule 23(e)(2). The Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's-length negotiations by competent counsel with the assistance of a well-respected and experienced mediator. Joint Decl. ¶21.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Joint Decl. ¶17. Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial, particularly given Plaintiff's success on Defendant's motion to dismiss. *Id.* at ¶18. Defendant denies liability, believes it acted in good faith and in compliance with the law, believes it would prevail on a motion for summary judgment and in opposing class certification and has shown a willingness to continue vigorous litigation. *Id.* All that is certain is that with continued litigation, the putative class would face a notably longer wait before receiving any potential recovery, if they received any recovery at all. *Id.* at ¶19. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery for the Settlement Class, and the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with completing a trial and any appellate review. *Id.*

### C.     The Settlement Agreement is the Product of Good Faith, Informed, and Arm's-Length Negotiations

"A proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea v. Carnival Corp.,* 238 F.R.D. at 672 (quoting *Bennett v. Behring Corp.,* 737 F.2d. at 986); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arm's-

length negotiations by experienced Class Counsel").

Here, the Settlement is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at the center of this Action. Joint Decl. ¶21. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases. *Id*. at ¶15. This experience proved beneficial to Plaintiff and the Settlement Class during negotiations of the Settlement. *Id.* Class Counsel ensured that informal discovery was conducted prior to mediation, *see id.* at ¶¶ 6, 17, that enabled them to gain an understanding of the evidence related to central issues in the Action, including damages and liability, and prepare for well-informed settlement negotiations. *Encarnacion v. J.W. Lee, Inc.,* 15-CIV-61927, 2015 WL 6437686 at *3 (S.D. Fla. Oct. 22, 2015) (granting final settlement approval where there was no formal discovery but parties exchanged documents and opt-in plaintiffs were interviewed prior to mediation).

The Parties' negotiations were assisted by a formal mediation with an experienced and respected mediator, Andrew Byrne. Joint Decl. ¶6. The mediation and the negotiations were conducted over several days and sessions at arm's-length and were extensive. *See Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Joint Decl. ¶¶ 6, 7. Moreover, there was no discussion of attorneys' fees or a Service Award until all material terms of the Settlement were reached. *Id.* at ¶21.

### D.     The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted. To determine whether a settlement is fair, adequate, and reasonable, the Court considers all relevant factors, including:

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved.

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466–67 (S.D. Fla. 2002).

Each of these factors relevant to Preliminary Approval are discussed in more detail below.

### 1.    Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case. Joint Decl. ¶18. However, they are also pragmatic that the law surrounding college liability for refunds arising out of the COVID-19 pandemic is just developing and has been inconsistent within courts across the United States. *Id.* They are aware that there are uncertainties in a trial, particularly given the novel case theory here. *Id.* Class Counsel are also aware of the risks inherent from any appeal and subsequent proceedings of a successful trial verdict. *Id.* Further, it still remains unclear whether Plaintiff would be able to certify a class for purposes of trial. *Id.* Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *Id.*

Even if Plaintiff and the Settlement Class ultimately prevailed at trial, recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members without further delay and avoids the risk of an adverse judgment at trial or on appeal.

### 2.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like,

should be hesitant to substitute its own judgment for that of counsel." *Id.*

Settlements may be considered reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ( "that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $2,400,000 Settlement Fund is more than reasonable, given the novelty of the situation presented, the complexity and uncertainty of certain issues in the litigation, particularly whether Defendant breached an express or implied contract for exclusively in-person education and the appropriate calculation of damages should the Settlement Class be successful, as well as the significant risks and barriers that loomed in the absence of settlement. Joint Decl. ¶9. The Settlement Fund is reasonable when considering the recovery achieved against the likely recoverable damages. *Id.* at 10. The Settlement Fund represents a refund of approximately 60% of Settlement Class Members' total likely recoverable damages for the portion of the Spring 2020 Semester following Barry University's COVID-19 campus closure and transition to online learning. *Id.* By Class Counsel's estimation, this is an excellent result for the Settlement Class and far more than a mere fraction that has been approved in other cases in this district and in the Eleventh Circuit. *Id.*; *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (approving of settlement amounting to only "a small fraction of desired recovery" for class members). There can be no doubt that this Settlement is a fair and reasonable recovery in light of Defendant's vigorous defense, the uncertainty of class certification, and the challenging and unpredictable path the Settlement Class would face absent a settlement. Joint Decl. ¶10.

### 3.      Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims compared to the cost of individual lawsuits by class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Joint Decl. ¶20.

### 4.      Stage of Proceedings

Courts consider the stage of proceedings at which a settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

Although the Settlement here was reached fairly early in the proceedings, Defendant had moved to dismiss twice, moved to strike the class, and Plaintiff opposed those motions, all of which gave the Parties information about the evidence, claims and theories asserted by the other. Joint Decl. ¶17. Further, before mediation, the Parties engaged in informal discovery of the central issues of the litigation, learning the value of the claims asserted and the extent of the disclosures and promises made to enrolled students. *Id.* As a result, Class Counsel was well positioned to evaluate the strengths of Plaintiff's claims, Defendant's defenses, and prospects for success. *Id.*

### E.      Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in the Settlement. "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied . . ." *Papa v. Grieco Ford Fort Lauderdale, LLC,* No. 18-21897-CIV, 2019 WL

11623985, at *2 (S.D. Fla. Jan. 28, 2019) (citations omitted). The manageability of a potential trial need not be addressed because if the Settlement is approved, the need for a trial would be eliminated. *Id.*

Here, the Rule 23(a) requirements and Rule 23(b)(3) requirements are met. Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to opt-out, of their right to object and be heard on its fairness, and of the date, time, and place of the Final Approval Hearing. *See* Manual for Compl. Lit., Fourth, at §§ 21.632, 21.633 (2004). For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3). In accordance with the 2018 amendments to Rule 23(e)(1), the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

### 1.      The Settlement Class satisfies the requirements of Rule 23(a)

Certification under Fed. R. Civ. P. 23(a) requires:

> (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation").

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997).

***Numerosity.*** The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class has nearly 6,000 members, and joinder of all is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

***Commonality.*** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature

that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. Plaintiff has asserted multiple questions of law and fact – centering on whether students were owed refunds of tuition and fees as result of the change to remote instruction and the closure of campus facilities and services– that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same or similar way, and that would generate common answers. Additionally, Plaintiff asserted that all Settlement Class members were subject to the same agreements, representations, instructions regarding COVID-19 prompted campus closures, and refund policies. There will be no issue demonstrating Class Members have suffered the same injury.

  ***Typicality.*** Typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Where Plaintiff's claims arise from the same event as the absent Settlement Class Members' claims, Plaintiff is typical of the entire Settlement Class. Here, Plaintiff was moved to online-only instruction and lost access to some on-campus housing, dining, and other resources, services, and amenities just as her fellow Settlement Class Members were.

  ***Adequacy.*** Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314-15; The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific*

*Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotations omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel. Each firm representing the class is a leader in the class action field and each attorney has extensive experience prosecuting complex class actions which has helped them to vigorously litigate on behalf of the Settlement Class thus far. Class Counsel has devoted substantial time and resources and will continue to do so. *See* Joint Decl., Exhibits 1-3, attached.

### 2.  The Settlement Class also satisfies the requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that there is a "direct impact" of common issues of law and fact "on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotations omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to some Settlement Class Member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### F.  The Court Should Approve the Proposed Notice Program

Rule 23(e)(1)(B) states "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing

that the court will likely be able to (i) approve the proposal under Rule 23(e)(2), and (ii) certify the class for purposes of judgment on the proposal." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, substantive claims must be "adequately described" and "the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotations omitted); *see also* Manual for Compl. Lit., Fourth, § 21.312 (2004) (listing notice requirements).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the Settlement's substantive terms. Joint Decl. ¶14. It will advise Settlement Class members of their options for remaining part of the Settlement Class or for opting-out of the Settlement; for electing Settlement Class Member Benefits afforded by the Settlement; for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award; and how to obtain additional information about the Settlement. *Id.* The Notice Program is designed to directly reach a very high percentage of Settlement Class Members, with consideration that Settlement Class Members' contact information is readily available and regularly updated by Barry University. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined

based on the Final Approval Hearing date.  Class Counsel propose the following schedule:

| | |
|---|---|
| Notice Program Begins (Email and Postcard Notices go out) | 30 days after Preliminary Approval Order |
| Notice Program Ends (remailing of bounced Emails or undeliverable Postcard Notices) | 60 days after Notice Program begins |
| Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, as well as application for attorneys' fees and litigation costs and application for a Service Award | 45 days prior to the Final Approval Hearing |
| Deadline for Settlement Class members to Opt-Out of the Agreement (Opt-out Period) | 30 days prior to the Final Approval Hearing |
| Deadline for Settlement Class Members to make Objections | 30 days prior to the Final Approval Hearing |
| Deadline to Submit Election Form | 30 days prior to the Final Approval Hearing |
| Final Approval Hearing | The week of July 26, 2021 (at least 120 days after Preliminary Approval Order) |

## VI.     CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice Program and the form and content of the Notices; (4) approve the opt-out and objection procedures set forth in the Notice Program; (5) appoint Plaintiff as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in the Agreement; and (7) schedule a Final Approval Hearing.  A Proposed Preliminary Approval Order is attached as **_Exhibit E_**.

## <u>CERTIFICATE OF COUNSEL PURSUANT TO LOCAL RULE 7.1(a)(3)</u>

Counsel for Plaintiff conferred with counsel for Defendant, who does not oppose the relief requested in this Motion.

*/s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
Kristen Lake Cardoso FBN 44401
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
cardoso@kolawyers.com

Daniel L. Warshaw (*pro hac vice*)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com

Anna C. Haac (*pro hac vice*)
Jennifer Thelusma FBN 1019776
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
ahaac@tzlegal.com
jthelusma@tzlegal.com

*Counsel for Plaintiff*
*and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>*/s/ Jeff Ostrow*</u>
Jeff Ostrow