**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MARLENA ROSADO, on behalf of herself                 CASE NO. 20-cv-21813-JEM
and all others similarly situated,

       Plaintiff,

v.

BARRY UNIVERSITY, INC,

       Defendant.

_____/

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**
**AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES**
**AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

This Action[1] is one of many novel class actions that arose when universities and colleges

ceased in-person instruction in response to the ongoing COVID-19 pandemic without issuing pro-

rata refunds to Students who paid to attend in-person and on-campus university programs.  During

the course of vigorously contested litigation involving claims asserted by Plaintiff on behalf of

approximately 6,000 Students who were forced to transition from in-person, on-campus instruction

to solely online instruction when Barry closed its campus, the Parties negotiated the Class

Settlement Agreement and Release attached as ***Exhibit A***.  The Settlement—which consists of

Barry's payment of $2,400,000.00, inclusive of attorneys' fees and expenses to be awarded to

Class Counsel, a Service Award to the Class Representative, and payment of all fees and costs of

the Settlement Administrator—is an outstanding result.

      The Parties now seek Final Approval of the Settlement, a Service Award to the Class

Representative, whose willingness to represent the Settlement Class and participation in the Action

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Settlement.

helped make the Settlement possible, and an award of attorneys' fees and the reimbursement of certain costs incurred in prosecuting the Action.  In further support of this Motion, the Parties submit a Joint Declaration of Class Counsel Jeff Ostrow, Anna Haac, and Daniel Warshaw, attached as *Exhibit B* ("Joint Decl."), and a Declaration of Jennifer M. Keough, the Settlement Administrator, attached as *Exhibit C* ("Keough Decl.").

The Parties respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (3) appoint the Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 1(c) of the Settlement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain costs; and (7) enter Final Judgment dismissing the Action with prejudice.

Based on the controlling Eleventh Circuit standards, and supporting facts, the Settlement is fair, adequate, and reasonable and should therefore be finally approved.

## I.    INTRODUCTION

In March 2020, in response to the COVID-19 pandemic, Barry moved all of its learning to remote platforms for the remainder of the Spring 2020 Semester, encouraged Students living in on-campus housing to vacate, and limited other on-campus facilities and services.  As a result, Students no longer received in-person instruction and many Students were unable to access campus housing, dining, and other on-campus resources for which they had paid or for which they had been charged prior to the start of the semester.  Despite the move to remote education and the closing of some campus facilities, Barry did not issue a full prorated refund of Tuition Fees or Fees for the Spring 2020 Semester. Plaintiff sued Barry for such refunds, asserting claims for breach of contract, or in the alternative, unjust enrichment.  After losing a motion to dismiss, Barry denied

liability and asserted affirmative defenses.  The Parties undertook discovery and motion practice. During the course of conducting discovery, the Parties participated in a mediation with well-respected mediator, D. Andrew Byrne, Esq.  Following a full-day mediation session, and additional settlement discussions, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation.

On March 30, 2021, the Court entered its Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class (the "Preliminary Approval Order"), which further directed that Notice be provided to the Settlement Class and established a deadline for filing this Motion and for opt-outs and objections.

## II.    MOTION FOR FINAL APPROVAL

### A.    Procedural History

On May 1, 2020, Plaintiff filed a class action complaint on behalf of herself and all others similarly situated seeking a prorated refund of Tuition Fees and Fees paid towards the Spring 2020 Semester.  [DE #1].  On June 12, 2020, Barry filed a Motion to Dismiss.  [DE #12].  Plaintiff filed an Amended Complaint on June 26, 2020.  [DE #15].  The Amended Complaint alleged claims for breach of contract, or in the alternative, unjust enrichment because Barry moved in-person instruction online and restricted access to housing, dining, and on campus resources without providing a refund.  Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint on July 10, 2020, which was fully briefed by both Parties, including the filing of several Notices of Supplemental Authority.  [DE #21, #23, #27, #29, #34-#37, #41, #44-#45, #49-#50].  Defendant also filed a Motion to Strike Class Allegations on October 16, 2020.  [DE #46].  On October 30, 2020, this Court denied Defendant's Motion to Dismiss, and on November 2, 2020, the Court denied Defendant's Motion to Strike.  [DE #51, #55].  Defendant filed an Answer and Affirmative Defenses on November 13, 2020.  [DE #56].  The Parties commenced discovery as to Plaintiff's

claims and Defendant's defenses.  Joint Decl. ¶3.

Thereafter, the Parties began discussing the prospect of settlement and scheduled a January 7, 2020 mediation.  *Id.*  In advance, giving consideration to Plaintiff's formal discovery requests, the Parties exchanged informal discovery regarding the Plaintiff's and the putative class' damages and had multiple telephonic conversations to clarify questions or obtain additional information. *Id.*  On January 7, 2021, the Parties participated in an all-day mediation under the supervision of D. Andrew Byrne, an experienced mediator in complex litigation and class actions.  *Id.* at ¶4.  The Parties did not settle the day of mediation; however, they continued to engage in settlement discussions and ultimately reached an agreement in principle.  *Id.*  On February 9, 2021, the Parties filed a Notice of Settlement and Joint Motion to Stay All Deadlines, which was granted on February 10, 2021.  *Id.* at ¶5.  [DE #68-#70].  Thereafter, for the next few weeks, the Parties negotiated the Settlement, resulting in signing the Settlement on March 17, 2021.  Joint Decl. ¶6.

On March 17, 2021, Plaintiff and Class Counsel filed their Unopposed Motion for Preliminary Approval.  [DE #71].  On March 30, 2021, the Court entered the Preliminary Approval Order that, *inter alia*, directed that Notice be given to the Settlement Class and established deadlines for the filing of this Motion, the timely submission of objections or opt-outs, and set a date for the Final Approval Hearing.  [DE #73].

**B.**     **Summary of the Settlement Terms**

The material Settlement terms, detailed in the Settlement, are the following:

**1.**     **The Settlement Class**

The Settlement Class is defined as:

> All Students who were enrolled during the Class Period as well as others who paid or were charged Tuition Fees, Room and Board Fees, Health Fees, Lab and Materials Fees, or Other Fees on behalf of such Students.

Settlement ¶1. Excluded from the Class are: (1) any Student who previously signed a release with

Barry relative to their enrollment; (2) Barry, its parents, subsidiaries, affiliates, officers, and directors; and (3) all judges assigned to this litigation and their immediate family members. *Id.*

### 2. Monetary Relief

Upon Final Approval, Barry is obligated to establish a $2,400,000.00 Settlement Fund which shall be used to: (i) pay all payments to Settlement Class Members; (ii) pay all Court-ordered awards of attorneys' fees and costs to Class Counsel; (iii) pay the Court-ordered Service Award to the Class Representative; (iv) pay all Taxes; (v) pay any costs of the Settlement administration; and (vi) pay any additional fees, costs and expenses not specifically enumerated in paragraph 3 of the Settlement, subject to approval of Settlement Class Counsel and Barry.  *Id.* ¶3.

Although not required to participate in and receive benefits under the Settlement, Settlement Class Members may choose to complete an electronic Election Form to indicate whether they prefer a cash payment or a Tuition Credit.  *Id.* ¶11.  The Notice directed Settlement Class Members to a link to the Settlement Website to submit an Election Form.

Settlement Class Members who complete the Election Form, will receive the Settlement Class Member Benefit allocated to them in accordance with what they elected on their Election Form after Barry exercises its option to first apply the Settlement Class Member Benefit to any outstanding balance owed to Barry.  *Id.* ¶8.  Those Settlement Class Members who do not complete an Election Form will receive their Settlement Class Member Benefit as follows: (a) Former Students will receive a cash payment to their address on file with Barry; and (b) Current Students who have not graduated when payment of the Settlement Class Member Benefit is due will receive a cash payment or a Tuition Credit, at Barry's discretion.  *Id*.

Within 15 business days after Final Approval, or if there are objections, within 15 business days after the Effective Date, Settlement Class Member Benefits shall be distributed as follows:

**a. Tuition Allocation**: 78% of the Net Settlement Fund will be allocated towards a

percentage of Settlement Class Members' Tuition Fees for the Spring 2020 Semester. Barry shall determine the percentage of the net Tuition Fees it received for Spring 2020 from Full-Time Students and from Part-Time Students. The percentage of net Tuition Fees received from Full-Time Students will be the percentage of the Tuition allocation of the Net Settlement Fund to disburse to the Full-Time Students, divided equally among all Settlement Class Members who were Full-Time Students. The percentage of net Tuition Fees received from Part-Time Students will be the percentage of the Tuition allocation of the Net Settlement Fund to disburse to Part-Time Students divided equally among all Settlement Class Members who were Part-Time Students.

**b. Room, Board, and Fee Allocation**: 22% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Room and Board Fees, Health Fees, Lab & Material Fees, and Other Fees for the Spring 2020 Semester, and distributed according to the following schedule:

i. 18% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Room and Board Fees and divided equally among those Settlement Class Members who were Residential Students.

ii. 2% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Health Fees and divided equally among those Settlement Class Members who were charged or paid a Health Fee in Spring 2020.

iii. 2% of the Net Settlement Fund will be allocated towards a percentage of Settlement Class Members' Lab and Materials Fees and Other Fees and divided equally among all Settlement Class Members who were charged or paid a Lab and Materials Fees and Other Fees.

*Id.* ¶9.

Settlement Class Members who receive cash refunds shall have 90 days from the date on the checks to negotiate their Settlement Class Member Benefit. Any Settlement checks not negotiated by Settlement Class Members within this time period shall be used by Barry for the direct benefit of Students in a manner it sees fit in its discretion. *Id.* ¶10.

### 3. Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Barry from claims related to the subject matter of the Action. The

detailed release language is found in paragraph 14 of the Settlement.  *Id.* ¶14.

### 4.  Settlement Notice

The Parties have successfully completed the Notice Program. Joint Decl. ¶7. The Notice Program was designed to and did provide the best notice practicable and was tailored to take advantage of the information Barry had available about Settlement Class members.  *See* Settlement ¶11; Joint Decl. ¶8.  All costs of the Settlement Administrator shall be paid out of the Settlement Fund.  Settlement ¶11.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement.  Keough Decl. ¶¶9-22; Joint Decl. ¶9.  The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Rule 23 and the constitutional requirement of due process.  Keough Decl. ¶9-22; Joint Decl. ¶10.

### 5.  Settlement Termination

Either Party may terminate the Settlement if it is rejected or materially modified by the Court or an appellate court.  Settlement ¶17.  Barry also has the right to terminate the Settlement if more than 25 Settlement Class Members from among the total Settlement Class exercise their right to opt-out of the Settlement.  *Id.* ¶21. The Opt-Out Period ends 30 days before the Final Approval Hearing.  To date, there is only one (1) opt-out, making it unlikely the 25 required to terminate the Settlement will be reached.  Joint Decl. ¶11.

### 6.  Service Award

Class Counsel are entitled to request, and Barry will not oppose, a Service Award of $5,000.00 for the Class Representative.  Settlement ¶3(a).  If the Court approves it, the Service Award will be paid from the Settlement Fund and will be in addition to any other relief to which

the Class Representative is entitled as a Settlement Class Member. *Id.* The Service Award will compensate the Class Representative for the risks she undertook in prosecuting the Action and for the general release of all her potential claims against Barry, which is broader than the release applicable to unnamed Settlement Class Members. *Id.* ¶14(c). The Settlement is not contingent on Plaintiff receiving a Service Award and, thus, the Service Award does not constitute either a salary or a bounty. *See* Joint Dec. ¶24.

### 7.    Attorneys' Fees and Costs

Class Counsel are entitled to request, and Barry will not oppose, attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of litigation costs. *Id.* ¶3(b). The Parties negotiated and reached an agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement. Joint Decl. ¶¶12, 26.

### C.    <u>Argument</u>

Court approval is required for a class action settlement. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) (quoting *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006)). Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *4 (quoting *In re Nissan Motor Corp.*

*Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).  Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources.  The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> 1. **The Court Has Personal Jurisdiction Over the Settlement Class Because Settlement Class Members Received Adequate Notice and an Opportunity to Be Heard.**

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the Notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

> a. **The Best Notice Practicable Was Furnished.**

The Notice Program was comprised of three parts: (1) Email Notice to reach those Settlement Class Members identified as Current Students of Barry; (2) direct mail Postcard Notice to Settlement Class Members identified as Former Students of Barry or Current Students of Barry who do not have an active email address or the Email Notice is bounced back as undelivered; and (3) a Long-Form Notice with more detail than the Email Notice or Postcard Notice, that has been available on the Settlement Website or sent to Settlement Class Members by email or regular mail by Barry or Class Counsel upon their request.  Settlement ¶11; Keough Decl. ¶¶9-12.

Each facet of the Notice Program was timely and properly accomplished.  Keough Decl. ¶¶9-14.  The Settlement Administrator received data from Barry that identified the names, mailing addresses, email addresses, student ID's, and amounts of tuition paid of 6,077 individuals identified as Settlement Class Members.  Keough Decl. ¶¶7, 8.  Prior to mailing Notice, the

Settlement Administrator ran the addresses through the National Change of Address Database.  *Id.*
¶8.  On April 29, 2021, the Settlement Administrator sent Email Notice to 3,486 Settlement Class
Members and mailed the Postcard Notice via USPS first class mail to 2,595 Settlement Class
Members.  *Id.*  ¶¶9, 10.   As of July 8, 2021, Email Notice to four Settlement Class Members
"bounced back" as undeliverable, prompting four Postcard Notices to be mailed.  *Id.* ¶11.  As of
July 8, 2021, 100% of the 6,077 Settlement Class Members received Email Notice or Postcard
Notice.  *Id.* at ¶12.

The Settlement Website, www.BarrySpring2020Refund.com, went active on April 29,
2021, hosting copies of important case documents, answers to frequently asked questions, contact
information for Class Counsel and the Settlement Administrator, the link to electronically file the
Election Form, and all information required by paragraph 9 of the Preliminary Approval Order.
*Id.*  As of July 8, 2021, the Settlement Website has tracked 7,260 unique users who registered
21,938 page views.  *Id.* at ¶15.  In addition, a toll-free number, 1-833-358-1846, was established
and has been operational since April 29, 2021.  *Id.* at ¶16.  By calling, Settlement Class Members
are able to obtain Settlement information, 24 hours a day, 7 days a week.  *Id.*  As of July 8, 2021,
the toll-free number has received 107 calls.  *Id.*

### b.    The Notice Program Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.

The Court-approved Notice Program satisfied due process requirements because they
described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make
a decision to remain a class member and be bound by the final judgment."  *In re Nissan Motor
Corp. Antitrust Litig*., 552 F.2d at 1104-05.  The Notices, among other things, defined the
Settlement Class, described the release to Barry under the Settlement, as well as the amount and
proposed distribution of the Settlement Fund, and informed Settlement Class members of their

right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Settlement and Long Form Notice, as well as other important documents.  Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to 33.33% the Settlement Fund, plus expenses, and a Service Award for the Class Representative.  Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Keough Decl., Exhibits B and C.

As of July 13, 2021, the Settlement Administrator had received only one opt-out request and no objections to the Settlement had been filed.  Joint Decl. ¶11; Keough Decl. at ¶¶19, 21.  Updated information will be supplied after the deadline to opt-out or object and prior to the Final Approval Hearing, if needed.

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal,

nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1)   the existence of fraud or collusion behind the settlement;
>
> (2)   the complexity, expense, and likely duration of the litigation;
>
> (3)   the stage of the proceedings and the amount of discovery completed;
>
> (4)   the probability of the plaintiffs' success on the merits;
>
> (5)   the range of possible recovery; and
>
> (6)   the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  Additionally, effective December 1, 2018, Rule 23(e) was amended to add a mandatory, but not exhaustive, list of similar final approval factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any ¶required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The analysis set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length.

This Court is aware of the vigor with which the Parties litigated before reaching Settlement. The sharply contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (no evidence of collusion, but to the contrary record showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Class Counsel negotiated the Settlement with similar force. Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Barry engaged in formal mediation with Mr. Byrne. All negotiations were arm's-length and extensive. Joint Decl. ¶4; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (class settlement was not collusive because it was overseen by "an experienced and well-respected mediator").

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; litigating them is both difficult and time-consuming, and recovery by any means other than settlement would require years of litigation. Joint Decl. ¶13. *See also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"); *United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial

judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial"). The Settlement provides immediate and substantial benefits to a Settlement Class of over 6,000 members. Joint Decl. ¶13.

> As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993):
>
> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

(alterations in original and citation omitted). Because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), the Settlement's adequacy under Rule 23(e)(2)(C), providing reasonable Settlement benefits, should not be doubted.

        **c.**      **The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of meaningful litigation. Joint Decl. ¶14. Specifically, dealing with novel litigation, they researched and drafted the Complaint and Amended Complaint, fully briefed Barry's Motion to Dismiss, drafted portions of an opposition to Barry's Motion to Strike (which ultimately was denied before the response deadline),

issued discovery, reviewed and analyzed information regarding the Plaintiff's and Settlement Class Members' damages, and engaged in the mediation process and other settlement negotiations. *Id.* Class Counsel's analysis and understanding of the various legal obstacles, as well as the damage analysis, positioned them to evaluate with confidence the strengths and weaknesses of the claims and defenses through the conclusion of the litigation, as well as the range and amount of damages that were potentially recoverable if the Action successfully proceeded to judgment on a class-wide basis. *Id.*

### d. Plaintiff and the Class Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Anitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Class Counsel believe that Plaintiff had a strong case against Barry. Joint Decl. ¶16. Even so, Class Counsel are mindful that Barry advanced significant defenses in novel litigation that would have been required to overcome in the absence of the Settlement. *Id.* This Action involved several major litigation risks that loomed in the absence of settlement, including, but not limited to class certification, a probable motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id.* at ¶17. Additionally, Section 768.39, Florida Statutes (which, among other things, prohibits educational institutions from being held civilly liable for certain actions taken to diminish the impact or spread of COVID-19) was recently enacted and went into effect on July 1, 2021. *Id.* While Class Counsel believe the statute would be inapplicable to this already-filed Action (and that it may be unconstitutional), it clearly presents

an additional obstacle the Plaintiff would have to overcome in the absence of the Settlement.  *Id.*

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval.  *Id.* at ¶18.  The uncertainties and delays from this process would have been significant.  *Id.*

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.  *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 WL 19915, at *6 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. . . . It is possible that trial on the merits would result in … no relief for the class members. . . . Based on . . . the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement . . . is a fair and reasonable compromise."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

       e.      **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."  *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."  *Id.*  "[T]he court must remember that "compromise is the essence of settlement.  A just result is often no more than an arbitrary point between competing notions of

reasonableness." *Raines v. Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) (citing *Bennett*, 737 F.2d at 986) (internal annotations omitted).  This is because fairness of a settlement must be evaluated in light of "the likelihood of success on the merits, the complexity, expense, and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement." *Id.*  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief."  *Warren*, 693 F. Supp. at 1059.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them.  Joint Decl. ¶19.  Through this Settlement, Plaintiff and the Settlement Class have achieved a recovery of approximately 60% of Settlement Class Members' total likely recoverable damages for the portion of the Spring 2020 Semester following Barry's COVID-19 campus closure and transition to online learning, without further risks or delays.  *Id.*

This Settlement thus provides an extremely fair and reasonable recovery to the Settlement Class in light of Barry's defenses, as well as the challenging, unpredictable path of novel litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts.  *Id.* at ¶20. The automatic distribution process without the need to submit a claim further supports Final Approval.  *Id.*

><b>f.</b>   <b>The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval of the Settlement.</b>

Class Counsel strongly endorse the Settlement.  *Id.* at ¶19.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  '[T]he trial judge, absent fraud, collusion, or the

like, should be hesitant to substitute its own judgment for that of counsel.'" (citations omitted)).

There has been no opposition to the Settlement. As of July 13, 2021, there has been only one opt-out and no objections. Joint Decl. ¶11; Keough Decl. at ¶¶19, 21. This is another indication that the Settlement Class is satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002); *also Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement.").

### 3.    The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Fed. R. Civ. P. 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the Settlement Class Members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

Rule 23(a)(1) numerosity is satisfied because the Settlement Class consists of over 6,000 individuals, and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class

members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, Rule 23(a)(2) commonality is readily satisfied as there are multiple questions of law and fact – centering on whether Students were owed reimbursements of Tuition Fees and Fees as a result of the change to remote instruction and the closure of campus facilities and services – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Settlement Class Members, satisfying Rule 23(a)(3) typicality. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class Members. She was moved to online-only instruction, lost access to some on-campus housing, dining, and other resources, services, and amenities, suffered the same injuries as them, and they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the Rule 23(a)(4) adequacy of representation requirement as the determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class."

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).  Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests.  *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001).  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and who devoted substantial time and resources to vigorous litigation of the Action. *Id;* Joint Decl. ¶21, Exhibits 1-3.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Rule 23(b)(3)'s predominance requirement is readily satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each member.  Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

Based on the foregoing, the Settlement is fair, adequate and reasonable and should therefore be finally approved.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Barry does not oppose, a Service Award for the Class Representative in the amount of $5,000.00. Settlement ¶3(a).

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). However, recently, in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), the Eleventh Circuit held that 19th century Supreme Court precedent prohibits an incentive award that "compensates a class representative for his time and rewards him for bringing a lawsuit."[2] *Id.* at 1260–61. In the two cases from the 1800s relied on by the majority in *Johnson*, the named plaintiffs sought an actual salary for the time they expended on the case and reimbursement for personal expenses like train fare they incurred while performing work for the case. *Id.* at 1256–57.

This case is distinguishable from *Johnson*. First, unlike the service award in *Johnson*, the Service Award here is not a "salary" or "bounty," but rather is an award for the risk that Plaintiff undertook in bringing the case on behalf of the class. *See Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *8-9 (N.D. Ga. Mar. 8, 2021) (distinguishing *Johnson* and approving $25,000.00 payments from the settlement fund to each of five class representatives in the case where they "were not promised a 'bonus' or 'salary,' but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights."); *Henderson v. Emory University*, No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020) (distinguishing *Johnson* and approving incentive awards to class representatives where they faced considerable risk in pursuing the lawsuit, the settlement agreement was not contingent on the class representatives receiving an award, and the class representatives were integral to achieving the settlement which in turn benefited the entire class.). Here, there was no discussion of attorneys' fees or a Service Award until all material terms of the Settlement were reached, Joint Decl. ¶¶ 24, 26, so this is not a pre-

---

[2] No mandate in *Johnson* has been issued and a motion for rehearing *en banc* is pending.

promised "salary" or "bounty" to pay for Plaintiff's time or reward her for bringing the suit that would have driven her to make decisions against the best interests of the class (a primary concern in *Johnson*'s reasoning).  Plaintiff also faced considerable risk, alienation, and reputational harm in her community by leading a class action suit against her own school.  Moreover, Plaintiff provided substantial assistance that enabled Class Counsel to successfully prosecute the Action, including submitting to interviews with Class Counsel, reviewing all material filings, approving the Settlement, locating and forwarding responsive documents and information, and participating in mediation.  Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary.  In so doing, Plaintiff was integral to forming the theory of the case and litigating it through settlement.  Joint Decl. ¶22.

Second, because the Settlement includes a general release by Plaintiff of all potential claims against Barry that is broader than the release applicable to the unnamed Settlement Class Members (which releases claims arising from, relating to, or in connection with Tuition Fees, Room and Board Fees, Health Fees, Lab and Materials Fees or Other Fees relating to or arising out of the Spring 2020 Semester), the Service Award is independent compensation to Plaintiff for her release of all of her claims against Barry.  *See* Settlement ¶14; *see also Holman v. Experian Information Solutions, Inc.*, 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) (recognizing that a service award may compensate a named plaintiff for releasing a broader range of claims than those released by the unnamed class members).  Accordingly, *Johnson* does not prevent the requested Service Award.[3]

---

[3] If this Court is not inclined to approve the requested Service Award based on *Johnson*, Class Counsel respectfully request that this Court approve the remainder of the Settlement and reserve jurisdiction to allow Class Counsel to renew the request for a service award should *Johnson* be reversed. *See Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 WL 2012366 (S.D. Fla. May 20, 2021) (reserving jurisdiction to award service awards if *Johnson* is reversed).

The end-result of Plaintiff's efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class.  Joint Decl. ¶23.  The Service Award of $5,000.00 is less than 0.208% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable.  *Id.* at ¶25; *see, e.g., Papa v. Grieco Ford Fort Lauderdale, LLC*, No. 18-cv-21897, 2019 WL 11623986, at *3 (S.D. Fla. June 5, 2019) (approving service award of $10,000.00, or about .205% of a $4,871,160.00 settlement).  Accordingly, the Service Award requested here is reasonable and should be approved, and should otherwise be ordered paid to the Plaintiff in exchange for her general release to Barry.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $800,000.00, which is equal to 33.33% of the $2,400,000.00 Settlement Fund.  Joint Decl. ¶26. Class Counsel also request reimbursement of limited out-of-pocket costs and expenses totaling $8,494.79 incurred in connection with the prosecution of the Action and in connection with the Settlement.  *Id.*  Class Counsel and Barry negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms.  *Id.*  The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

A.    **The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'"  *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (quoting *In re Gould Sec. Litig*., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989)).  "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant."  *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (citing *Van Gemert*, 444 U.S. at 478).  "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'"  *Gevaerts*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained

through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).  Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case).  Class Counsel's fee request falls within this accepted range.

**B.      Application of the *Camden I* Factors Supports the Requested Fee.**

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)      the time and labor required;
(2)      the novelty and difficulty of the relevant questions;
(3)      the skill required to properly carry out the legal services;
(4)      the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)      the customary fee;
(6)      whether the fee is fixed or contingent;
(7)      time limitations imposed by the clients or the circumstances;

(8)     the results obtained, including the amount recovered for the clients;

(9)     the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and the length of the professional relationship with the clients; and

(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.

These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. Here, these factors support the requested fee.

### 1.     The Claims Against Barry Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶27. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims against Barry. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to conducting discovery. *Id*. Class Counsel reviewed documents produced by Barry and served written discovery. *Id*. Class Counsel also expended significant resources researching and developing the arguments presented in opposition to Barry's motions and briefs. *Id*. As is evident by the docket, the case was vigorously contested during the time before Settlement. *Id.*

Settlement negotiations consumed additional time and resources. *Id.* at ¶28. The mediation

session and subsequent settlement discussions required substantial preparation and damage analysis. *Id.* Finally, a significant time was devoted to negotiating and drafting of the Settlement and the preliminary approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. *Id.* All of this work consumed a substantial amount of time. *Id.* Class Counsel will also spend time with Settlement administration after Final Approval. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* at ¶29. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* The time and resources Class Counsel devoted to prosecuting and settling this Action readily justify the requested fee. *Id.*

## 2. The Issues Involved Were Novel and Difficult and Required the Skill of Highly Talented Attorneys.

This Court witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. *Id.* at ¶ 36. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information. *Id.*

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure. *Id.* at ¶37. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. *Id.* The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture. *Id.*

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Barry was represented by extremely capable counsel. *Id.* at ¶38. They were worthy,

highly competent adversaries.  *Id.*; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3.    Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, the Settlement Class Members will receive an immediate cash benefit or Tuition Credit representing an approximate 60% reimbursement.  Joint Decl. ¶30.  Moreover, payments to eligible Settlement Class Members will be forthcoming automatically (although Settlement Class Members may opt to complete the electronic Election Form).  *Id.*

### 4.    The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks.  Joint Decl. ¶15.  As discussed, Barry raised substantial and potentially meritorious defenses in highly novel litigation prompted by the COVID-19 pandemic.  *Id.* at ¶16.  Success under these circumstances represents a genuine milestone.  Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'"  *Sunbeam*, 176 F. Supp. 2d at 1336.

Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."  *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).  "Undesirability" and relevant risks must be evaluated from the standpoint of class counsel as of the time they commenced the suit – not

retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting the Action was risky from the outset. Joint Decl. ¶17. Given these risks, the $2,400,000.00 cash recovery obtained through the Settlement is substantial in light of the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Barry's defenses, as well as given the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Joint Decl. ¶31.

**5.      Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.**

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *Id.* at ¶32. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—

also support the requested fee.  Joint Decl. ¶33.  In the Court's words:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees.  This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The progress of the Action shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis.  Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial expenses they have advanced.  Joint Decl. ¶34.  There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

**6.     The Requested Fee Comports With Fee Awards in Similar Cases.**

The fee sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit and in the Southern District.  *See, e.g., In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Legg v. Laboratory Corp. of America*, No. 14-cv-61543-RLR, 2016 WL 3944069, at *3 (S.D. Fla. Feb. 18, 2016) (awarding one-third of gross recovery for attorneys' fees, plus expenses); *Reyes v. ATT&T Mobility Servs., LLC*, No. 10-20837-Civ-COOKE, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (awarding one-third of the total maximum settlement fund); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees

awards); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082, at *20-21 (S.D. Fla. April 19, 2005) (awarding fees of 33.33 % of settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238, at *12-13 (S.D. Fla. May 30, 2003) (awarding fees of 33.33 % of settlement); *Tapken v. Brown*, No. 90-0691-CIV-Marcus, 1995 U.S. Dist. LEXIS 22931, at *11-12 (S.D. Fla. 1995) (33% of $10 million settlement); *see also Swift v. BancorpSouth Bank*, No. 1:10-cv-00090-GRJ, 2016 WL 11529613, at *13 (N.D. Fla. July 15, 2016) (awarding fees of 35%); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

Class Counsel's fee request also falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig*., Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring). Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 7.    The Expense Request Is Appropriate.

Class Counsel also request reimbursement for a total of $8,494.79 in litigation expenses. Joint Decl. ¶35. This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement. *Id.* Specifically, these costs and expenses consist of filing fees, process server fees, pro hac vice applications, mediator's fees and expenses, and legal research. *Id.* These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the

prosecution of this Action.  *Id.*

## V.      CONCLUSION

The Settlement with Barry securing $2,400,000.00 in cash compensation for the benefit of the Settlement Class represents an excellent result given the obstacles confronted in this Action. The Settlement more than satisfies the fairness, reasonableness and adequacy standard of Rule 23(e)(2), as well as the class certification requirements of Rules 23(a) and (b)(3).  Further, Class Counsel's application for fees and expenses is reasonable under all the circumstances.  The request satisfies the guidelines of *Camden I* given the results achieved, the notable litigation risks, the extremely complicated nature of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval of the Settlement*;* (2) certify for settlement purposes the Settlement Class pursuant to Rule 23(a), 23(b)(3), and 23(e); (3) appoint Marlena Rosado as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 1(c) of the Settlement; (5) approve the requested Service Award in the amount of $5,000.00 (or, alternatively, as compensation in exchange for the general release from Plaintiff to Barry); (6) award Class Counsel attorneys' fees in the amount of $800,000.00, and the reimbursement of expenses in the amount of $8,494.79; and (7) enter Final Judgment dismissing the Action with prejudice.  A proposed Final Approval Order is attached hereto as ***Exhibit D***.

Dated: July 13, 2021.

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
Kristen Lake Cardoso FBN 44401
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 954-525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
cardoso@kolawyers.com

Daniel L. Warshaw (*pro hac vice*)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com

Anna C. Haac (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
ahaac@tzlegal.com

*Counsel for Plaintiff
and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jeff Ostrow*
Jeff Ostrow